**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RICHARD BERMAN,                              CASE NO. CV F 13-0597 LJO SAB

                Plaintiff,        **ORDER ON COUNTY DEFENDANTS'**
                              **F.R.Civ.P. 12 MOTION TO DISMISS**
   vs.                                                    (Doc. 7.)

DEPUTY T. SINK, et al.,

                Defendants.
_____/

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

       Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, or reconsider, consent to a U.S. Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

       Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill

1

1    is unavailable on the original date set for trial.  If a trial trails, it may proceed with little advance notice,

2    and the parties and counsel may be expected to proceed to trial with less than 24 hours notice.

3    Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to

4    U.S. District Judges throughout the nation to serve as visiting judges. This action is under consideration

5    for such reassignment.  Case management difficulties, including trial setting and interruption, are

6    avoided with the parties' consent to conduct of further proceedings by a U.S. Magistrate Judge.

## INTRODUCTION

8        Defendants County of Fresno ("County") and several County Sheriff's Department

9    ("Department") officers[1] seek to dismiss as insufficiently pled and legally barred plaintiff Richard P.

10   Berman's (Mr. Berman's) false arrest, excessive force and related claims arising from his detention

11   after a confrontation with a Department court services deputy. Mr. Berman contends that his challenged

12   claims are adequately pled.  This Court considered the County defendants' F.R.Civ.P. 12(b)(6) motion

13   to dismiss on the record and VACATES the May 30, 2013 hearing, pursuant to Local Rule 230(g).  For

14   the reasons discussed below, this Court DISMISSES Mr. Berman's challenged claims.

## BACKGROUND[2]

### Summary

17       Mr. Berman is age 66 and a criminal defense attorney and characterizes himself as "a vigorous

18   and effective advocate who has repeatedly challenged law enforcement conduct."  Deputy Sink is

19   assigned to the Department's Court Services Division ("division") at the Fresno County Criminal

20   Courthouse ("courthouse"). Lt. Reynolds and Sgt. Bertsch are division supervisors. On March 13, 2012,

21   Deputy Sink arrested Mr. Berman after Mr. Berman, his client and the client's unidentified family

22   member ("family member") attempted to proceed through courthouse security screening. The complaint

23   alleges 42 U.S.C. § 1983 ("section 1983") unlawful detention, excessive force, retaliation, supervisory

24   and *Monell* liability and related California claims against the County defendants. The County defendants

---

[1]    Defendants seeking F.R.Civ.P. 12(b)(6) relief are the County, County Sheriff Margaret Mims ("Sheriff Mims"), Department Lieutenant John Reynolds ("Lt. Reynolds"), Department Sergeant George Bertsch ("Sgt. Bertsch") and Department Deputy T. Sink ("Deputy Sink"), who will be referred to collectively as the "County defendants."

[2]    The factual recitation summarizes Mr. Berman's operative Complaint for Damages and Injunctive Relief ("complaint"), the target of the County defendants' challenges.

contend that certain claims lack adequate facts and are legally barred.

**Mr. Berman's Arrest**

On March 13, 2012, Mr. Berman accompanied his client and her family member to a courthouse appearance. During their security clearance, Deputy Sink detected a toy wrench in the family member's purse. Deputy Sink advised the family member to throw away the toy wrench.

As Mr. Berman instructed the family member to take the toy wrench back to her car, "Deputy Sink forcefully grabbed Berman and placed him under arrest" to injure Mr. Berman's back, neck, arm and stomach/groin area. Mr. Berman sat handcuffed on a stool in the courthouse lobby and was prohibited to communicate with another attorney or his client.

At Mr. Berman's request, Sgt. Bertsch, Deputy Sink's immediate supervisor, came to the courthouse lobby and "unnecessarily lectured and humiliated Berman." Deputy Bertsch denied Mr. Berman's request that someone other than Deputy Sink escort Mr. Berman to the courthouse basement where he received a citation. Sgt. Bertsch unnecessarily ordered Deputy Sink and another deputy to escort Mr. Berman to the basement.

During her escort, Deputy Sink continued to use excessive force on Mr. Berman to further injure his right arm. In the courthouse basement, Mr. Berman was "forced to sit handcuffed in great pain," was permitted to sign a citation for violations of Penal Code section 148 (interfering with a peace office) and 243 (battery on a peace officer) and was released.

On that same day, Mr. Berman wrote a letter to the Department to complain.

**Scanning Mr. Berman's Files**

On April 17, 2012, Deputy Sink required Mr. Berman to put his legal files through a scanner when Mr. Berman entered the courthouse although Mr. Berman "has never been required to put his files through the scanner previously by any other deputy."

No charges were filed against Mr. Berman.

**The Complaint's Claims**

The complaint alleges that Mr. Berman was retaliated against for questioning Deputy Sink's authority and advocating the family member's rights. The complaint alleges section 1983 and California claims which will be discussed below.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The County defendants seek to dismiss several of the complaint's section 1983 and related claims as legally barred and lacking sufficient facts.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain

either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-679, 129 S.Ct. at 1949-1950.

A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by

1  the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford,*

2  *Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

3      With these standards in mind, this Court turns to the County defendants' challenges to several

4  of the complaint's claims.

5                              **False Arrest – Sgt. Bertsch**

6      The complaint's (first) section 1983 and (seventh) California false arrest/unlawful detention

7  claims allege that "Sgt. Bertsch's omissions and failures to intervene, resulted in plaintiff's being falsely

8  arrested without probable cause and/or unlawfully detained."

9      The County defendants argue that the complaint lacks facts to subject Sgt. Bertsch to liability for

10  false arrest/unlawful detention under section 1983 or California law.

11                          ***Section 1983 Requirements***

12      "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

13  acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

14  claimant of some right, privilege, or immunity protected by the Constitution or laws of the United

15  States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

16      "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

17  vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,

18  811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).

19  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived

20  of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S.

21  247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996

22  (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of

23  a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated

24  differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly

25  infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes

26  liability for violations of rights protected by the Constitution, not for violations of duties of care arising

27  out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

28      "Under Rule 8(a), a complaint must do more than name laws that may have been violated by the

1  defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept.*

2  *of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

3  *Direct Participation*

4  "Section 1983 creates a cause of action based on personal liability and predicated upon fault;

5  thus, liability does not attach unless the individual defendant caused or participated in a constitutional

6  deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct.

7  1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises

8  only upon a showing of personal participation by the defendant.")  "The inquiry into causation must be

9  individualized and focus on the duties and responsibilities of each individual defendant whose acts or

10  omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633.  Section

11  1983 requires that there be an actual connection or link between the defendant's actions and the

12  deprivation allegedly suffered.  *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct.

13  2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

14  A plaintiff cannot hold an officer liable "because of his membership in a group without a

15  showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th

16  Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the

17  'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935.

18  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a

19  constitutional violation."  *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral

20  participation requires "some fundamental involvement in the conduct that allegedly caused the

21  violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person

22  'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he

23  does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

24  is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588

25  F.2d 740, 743 (9th Cir. 1978).

26  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally

27  involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.

28  1998).  A section 1983 plaintiff "must state the allegations generally so as to provide notice to the

7

1   defendants and alert the court as to what conduct violated clearly established law." *Preschooler II v.*

2   *Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

3       The County defendants fault the complaint's lack of facts of Sgt. Bertsch's direct participation

4   in deprivation of Mr. Berman's Fourth Amendment rights in that the complaint alleges that Deputy Sink

5   arrested Mr. Berman.  The County defendants note the absence of facts that Sgt. Bertsch played a role

6   in Mr. Berman's arrest given the complaint's allegations that Sgt. Bertsch arrived only after Mr.

7   Berman's request and "could not have prevented the arrest."  The County defendants further note that

8   there is no indication that Sgt. Bertsch knew or should have known there was no legal basis to arrest Mr.

9   Berman.

10       The County defendants further argue that Sgt. Bertsch is not vicariously liable for Deputy Sink's

11   false arrest/unlawful detention under California law in that California Government Code section 820.8

12   provides "a public employee is not liable for any injury caused by the act or omission of another person,"

13   except as otherwise provided by statute.

14       Mr. Berman faults Sgt. Bertsch's acquiescence in Mr. Berman's continued detention and failure

15   to intervene to discontinue Mr. Berman's detention.  Mr. Berman argues that after Sgt. Bertsch was

16   summoned to the courthouse lobby, Sgt. Bertsch "specifically endorsed and ratified Deputy Sink's

17   misconduct."  Mr. Berman seeks to hold Sgt. Bertsch liable as a supervisor.  "A supervisor can be liable

18   in his individual capacity for his own culpable action or inaction in the training, supervision, or control

19   of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed

20   a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087,

21   1093 (9th Cir.1998) (internal alteration and quotation marks omitted).  Moreover, a supervisor "could

22   be held liable in his individual capacity if he knowingly refused to terminate a series of acts by others,

23   which he knew or reasonably should have known would cause others to inflict a constitutional injury."

24   *Dubner v. City and County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).  Mr. Berman concludes

25   that as a supervisor, Sgt. Bertsch was obligated "to intercede to prevent the continuation of the false

26   arrest."

27       The complaint lacks facts that Sgt. Bertsch was on notice that Deputy Sink had or was depriving

28   Mr. Berman's constitutional rights.  The complaint merely alleges that Sgt. Bertsch arrived in the

courthouse lobby in response to Mr. Berman's request and denied Mr. Berman's requests regarding his escort. The complaint alleges no facts, and Mr. Berman offers none, that Sgt. Bertsch was or should have been aware that Deputy Sink subjected Mr. Berman to constitutional violation or that Sgt. Bertsch was aware of Mr. Berman's version of events. Sgt. Bertsch neither arrested nor handcuffed Mr. Berman and thus did not directly participate in alleged constitutional violation arising from detention and handcuffing. Mr. Berman points to no pertinent authority to obligate Sgt. Bertsch to discontinue Mr. Berman's detention under the alleged facts. The complaint's (first) section 1983 and (seventh) California false arrest/unlawful detention claims fail, and Mr. Berman proffers nothing to resurrect them. As such, the false arrest/unlawful detention claims against Sgt. Bertsch are subject to dismissal.

**Retaliation – Sgt. Bertsch**

The complaint's (third) section 1983 claim alleges that Sgt. Bertsch's "omissions and failures to intervene" resulted in retaliation against Mr. Berman's exercise of First Amendment rights. The claim further alleges that Mr. Berman was subject to retaliation when he was falsely arrested and/or unlawfully detained, was subjected to excessive force, and "was unfairly singled out on April 17, 2012."

"Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Estrada v. Gomez*, 1998 WL 514068, at *3 (N.D. Cal. 1998). A "plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision." *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989); *CarePartners, LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008), *cert. denied,* 129 S.Ct. 2383 (2009). "Circumstances suggestive of retaliation include comments indicating vindictiveness and lack of alternative purpose." *Estrada*, 1998 WL 514068, at *3 ("merely being aware of ongoing litigation does not establish that all adverse actions taken thereafter are retaliatory").

The County defendants contend that Sgt. Bertsch is not subject to a First Amendment retaliation claim in that Sgt. Bertsch was present neither during Mr. Berman's March 13, 2012 arrest nor during Deputy Sink's April 17, 2012 directive Mr. Berman to scan Mr. Berman's files. The County defendants argue that an allegation that Sgt. Bertsch had Deputy Sink escort Mr. Berman reflects no more than "Sgt. Bertsch's desire to have Plaintiff cited and released." The County defendants point to "no linkage" to

1    Sgt. Bertsch to warrant dismissal of the section 1983 retaliation claim.

2        Mr. Berman argues Sgt. Bertsch retaliated against Mr. Berman in that "Sgt. Bertsch permitted

3    plaintiff's false arrest to continue," and "permitted the same deputy who used that [excessive] force to

4    escort plaintiff to the courthouse basement."   Mr. Berman continues that the complaint induces

5    inferences that "Sgt. Bertsch acted with a retaliatory intent in ratifying Deputy Sink's false arrest and

6    excessive force" given Mr. Berman's known, effective advocacy to challenge law enforcement, including

7    the Department.

8        The complaint lacks facts that Sgt. Bertsch retaliated at any time, and Mr. Berman proffers

9    nothing to support Sgt. Bertsch's alleged retaliation.   No inferences of retaliation arise from the facts of

10   his limited involvement in the matters at issue.   There are neither facts nor inferences therefrom of Sgt.

11   Bertsch's animus toward Mr. Berman.   Claims of knowledge of Mr. Berman's vigorous, effective

12   advocacy are unavailing.   The complaint's (third) section 1983 retaliation claim against Sgt. Bertsch is

13   subject to dismissal.

14                                    **Supervisory Liability**

15       The complaint's (fourth) section 1983 supervisory liability claim alleges that Sheriff Mims, Lt.

16   Reynolds and Sgt. Bertsch "failed to adequately supervise the Fresno County Sheriff's Court Services

17   Division personnel, and those failures constituted deliberate indifference to plaintiff's constitutional

18   rights."

19       The County defendants challenge the complaint's absence of facts "to link any supervisor to the

20   events in question."

21       Congress did not intend to "impose liability vicariously on [employers or supervisors] solely on

22   the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at

23   692, 98 S.Ct. at 2036.   Generally, supervisory personnel are not liable under section 1983 for actions of

24   their employees under a respondeat superior theory, and thus, when a named defendant holds a

25   supervisory position, the causal link between him and the claimed constitutional violation must be

26   specifically alleged and proved.  *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Fayle v.*

27   *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert.*

28   *denied*, 442 U.S. 941, 99 S.Ct. 2883 (1979).

To establish a prima facie case of supervisor liability, a plaintiff must show facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045. A supervising official is liable in his individual capacity if he/she "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (ratification, poor investigation, or failure to terminate series of events may make supervisor liable).[3] A section 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. "Thus, there must be facial plausibility in a plaintiff's allegations that some action/inaction on the part of a supervisor caused her alleged constitutional injury." *Alston v. County of Sacramento*, 2012 WL 2839825, at *4 (E.D. Cal. 2012). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### Sgt. Bertsch

The supervisory liability claim alleges that Sgt. Bertsch "failed to exercise appropriate supervision over Deputy Sink, or to remedy her misconduct." The supervisory liability claim further accuses Sgt. Bertsch of deliberate indifference "in failing to take other measures to prevent the March 13, 2012 incident, including providing inadequate trainings and briefings regarding weapons detection, and in creating a de facto policy of permitting over-aggressive and unnecessarily forceful conduct by Deputy Sink and other Court Services personnel."

The County defendants characterize supervisory allegations as to Sgt. Bertsch as vague and

---

[3]     The Ninth Circuit offered alternative elements to impose section 1983 liability on a supervisor: "'(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers*, 267 F.3d at 915 (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)).

1    conclusory in the absence of facts that Sgt. Bertsch set in motion a series of Deputy Sink's acts.  The

2    County defendants note the lack of facts of Sgt. Bertsch's presence during Mr. Berman's arrest and in

3    turn his ability to prevent the arrest.

4        The County defendants continue that inadequate training for "weapons detection" is irrelevant

5    in that Mr. Berman's property was not subject to search and in turn he suffered no constitutional

6    deprivation relative to a search.

7        Other than points discussed above, plaintiffs offer no meaningful resistance to dismissal of the

8    (fourth) section 1983 supervisory liability against Sgt. Bertsch.  As noted above, Sgt. Bertsch did not

9    participate directly in Mr. Berman's arrest and handcuffing, and the complaint lacks facts of anything

10   Sgt. Bertsch could have done or should not have done in a supervisory capacity to avoid alleged wrongs.

11   The (fourth) section 1983 supervisory liability claim against Sgt. Bertsch is subject to dismissal.

12                           ***Sheriff Mims And Lt. Reynolds***

13       The complaint also accuses Sheriff Mims and Lt. Reynolds of deliberate indifference "in failing

14   to take other measures to prevent the March 13, 2012 incident, including providing inadequate trainings

15   and briefings regarding weapons detection, and in creating a de facto policy of permitting over-

16   aggressive and unnecessarily forceful conduct by Deputy Sink and other Court Services personnel."

17       The County defendants characterize claims of wrongful policies attributable to Sheriff Mims and

18   Lt. Reynolds as vague, conclusory and "patently insufficient."  The County defendants argue that only

19   the County is subject to wrongful policy claims and that an official capacity claim against Sheriff Mims

20   is unnecessary.

21       Official-capacity suits "generally represent only another way of pleading an action against an

22   entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,

23   690, n. 55, 98 S.Ct. 2018 (1978).  The U.S. Supreme Court has further explained:

24           Personal-capacity suits seek to impose personal liability upon a government
         official for actions he takes under color of state law. . . .  Official-capacity suits, in
25       contrast, "generally represent only another way of pleading an action against an entity of
         which an officer is an agent." . . . As long as the government entity receives notice and
26       an opportunity to respond, an official-capacity suit is, in all respects other than name, to
         be treated as a suit against the entity.

27

28   *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099 (1985) (citations omitted).

                                          12

An official capacity action is not against the public employee personally, "for the real party in interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099. "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff,* 533 F.3d 780, 799 (9th Cir. 2008).

Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018. "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance*, 928 F.Supp. at 996). "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002).

"[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F.Supp. at 204. As the district court in *Luke*, 954 F.Supp. at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

*See Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996) ("if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed").

Mr. Berman argues that Sheriff Mims and Lt. Reynolds are subject to section 1983 supervisory liability in that:

1.   They "were personally involved in the administration of the Court Services Division";

2.   "Lt. Reynolds was the supervisor of the Court Services Division and responsible for the effectuation/implementation of the court security plan, personnel supervision, training and assignment, promulgation of policies/procedures";

3.   "Sheriff Mims was the signatory of the court security agreement between the Sheriff's

1   Department and the Fresno Superior Court and was ultimately responsible for all of the

2   tasks for which Lt. Reynolds was initially responsible";

3       4.    Sheriff Mims and Lt. Reynolds "failed to adequately supervise the Fresno County

4   Sheriff's Court Services Division personnel";

5       5.    Sheriff Mims and Lt. Reynolds "were deliberately indifferent in failing to take other

6   measures to prevent the March 13, 2012 incident, including providing inadequate

7   trainings and briefings regarding weapons detection, and creating a de facto policy of

8   permitting over-aggressive and unnecessarily forceful conduct by Deputy Sink"; and

9       6.    Sheriff Mims and Lt. Reynolds "failed to remedy the violation of plaintiff's

10   constitutional rights after it was reported by [Mr. Berman] the same day of the incident"

11   with Deputy Sink continuing "to engage in the same misconduct, as indicated by the

12   April 17, 2012 incident."

13   Mr. Berman concludes that the complaint adequately alleges that Sheriff Mims and Lt. Reynolds "either

14   knowingly refused to terminate a series of acts they reasonably should have known would cause

15   constitutional violations, acquiesced in constitutional deprivations by subordinates, or displayed reckless

16   or callous indifference to others' rights."

17       Mr. Berman attempts to extrapolate minimal, isolated incidents into supervisory liability based

18   on conclusions.  In effect, the complaint attempts to hold Sheriff Mims and Lt. Reynolds vicariously

19   liable for Deputy Sink's conduct.  The complaint lacks facts to support that Sheriff Mims and Lt.

20   Reynolds were on notice  of the potential for the alleged constitutional violations.  There are no facts of

21   their direct participation in promulgation or implementation of deficient policies.  The complaint lacks

22   facts that Sheriff Mims and Lt. Reynolds set in motion the acts of others, including Deputy Sink, or were

23   in a position to terminate acts of others which inflicted constitutional injury.  The complaint fails to

24   allege sufficient facts, as compared to legal conclusions, that Sheriff Mims and Lt. Reynolds by their

25   own individual actions violated Mr. Berman's constitutional rights.  Moreover, naming Sheriff Mims

26   in her official capacity is unnecessary given that the County is a defendant.

27       In sum, the (fourth) section 1983 supervisory liability claim is subject to dismissal.

28   / / /

**California's Bane Act – California Civil Code Section 52.1**

The complaint's sixth claim proceeds under California Civil Code section 52.1 ("section 52.1") to allege that the County defendants violated Mr. Berman's "federal and state constitutional rights to be free of false arrests, unlawful detentions, excessive and unreasonable force, retaliation for engaging in protected conduct, and his state constitutional right to engage in profession without undue interference or reprisal."

Section 52.1 permits a civil action against a person who interferes or attempts to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and California Constitutions and laws. "Section 52.1(b) provides a cause of action to any person who has been denied rights under the laws of California." *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), *cert. denied*, 537 U.S. 1098, 123 S.Ct. 816 (2003). The necessary elements for a section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights by threatening or committing violent acts; (2) that plaintiff reasonably believed that if she exercised her constitutional rights, defendants would commit violence against her []; (3) plaintiff was harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm." *Tolosko-Parker v. County of Sonoma*, 2009 WL 498099, at *5 (N.D. Cal. 2009).

Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844 (1998). "[N]othing in Civil Code section 52.1 requires any showing of actual intent to discriminate." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 842, 87 P.3d 1 (2004). Nonetheless, "section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas*, 32 Cal.4th at 707, 87 P.3d 1. A defendant is liable under section 52.1 "if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 882, 57 Cal.Rptr.3d 454 (2007).

"Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.

1    1997).

2                              ***County Liability***

3           The County defendants contend that the County's liability under section 52.1 "is vicarious, not

4    direct" because public liability in California must be "provided by statute." *See* Cal. Gov. Code, §

5    815(a).

6           The California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq., does

7    not provide that a public entity is liable for its own conduct or omission to the same extent as a private

8    person or entity. *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722

9    (2002).  California Government Code section 815(a) provides that a "public entity is not liable for an

10   injury, whether such injury arises out of an act or omission of the public entity or a public employee or

11   any other person," "[e]xcept as otherwise provided by statute."  Certain statutes provide expressly for

12   public entity liability in circumstances that are somewhat parallel to the potential liability of private

13   individuals and entities, but the Government Claims Act's intent "is not to expand the rights of plaintiffs

14   in suits against governmental entities, but to confine potential governmental liability to rigidly delineated

15   circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993);

16   *see Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App.3d 859, 866, 247 Cal.Rptr. 504

17   (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or

18   judicially declared forms of tort liability, except as may be required by state or federal Constitution, were

19   abolished.")

20          A court first determines whether a statute "imposes direct liability" on a defendant public entity.

21   *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004).  "[D]irect

22   tort liability of public entities must be based on a specific statute declaring them to be liable, or at least

23   creating some specific duty of care, and not on the general tort provisions of [California] Civil Code

24   section 1714." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656

25   (2003).  "[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the

26   general rule that statutory causes of action must be pleaded with particularity is applicable." *Lopez v.*

27   *So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985).  Thus, "to state a cause of

28   action against a public entity, every fact material to the existence of its statutory liability must be pleaded

                                        16

with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819,131 Cal.Rptr. 854 (1960).

The County defendants point to California Government Code section 815.2(a) as the source of its vicarious liability: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." *See Burns v. City of Redwood City*, 737 F.Supp.2d 1047, 1065 (N.D. Cal. 2010) ("the municipal defendants may be held vicariously liable for an officer's violation of section 52.1. Cal. Gov't Code § 815.2(a).").

The parties appear to agree that the County lacks direct liability under section 52.1 and may be held only vicariously liable for its employees' conduct.  The County defendants' unopposed points on this issue are valid, and the County's liability as to section 52.1 claims is limited to vicarious liability for its employees' conduct.

### Sheriff Mims, Lt. Reynolds And Sgt. Bertsch

The County defendants further argue that Sheriff Mims, Lt. Reynolds and Sgt. Bertsch are not subject to section 52.1 liability in that the complaint targets Deputy Sink to arrest Mr. Berman and lacks facts of their presence during the arrest.  The County defendants further point to the absence of Sheriff Mims', Lt. Reynolds' or Sgt. Bertsch's vicarious liability given that California Government Code section 820.8 provides "a public employee is not liable for any injury caused by the act or omission of another person," except as otherwise provided by statute.

The complaint lacks facts of Sheriff Mims', Lt. Reynolds' and Sgt. Bertsch's direct conduct to interfere with or to attempt to interfere by threats, intimidation or coercion with Mr. Berman's rights. This Court agrees with the County defendants that section 52.1 contemplates intentional conduct. "[W]e conclude that the multiple references to violence or threats of violence in the statute serve to establish the unmistakable tenor of the conduct that section 52.1 is meant to address. The apparent purpose of the statute is not to provide relief for an over-detention brought about by human error rather than intentional conduct." *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 959, 137 Cal.Rptr.3d 839 (2012). Mr. Berman's reliance on the multiple alleged constitutional violations fails to substantiate that Sheriff

Mims, Lt. Reynolds and Sgt. Bertsch are subject to section 52.1 liability. The section 52.1 claim fails as to Sheriff Mims, Lt. Reynolds and Sgt. Bertsch. Mr. Berman offers no meaningful resistance to dismissal of the section 52.1 claim against Sheriff Mims, Lt. Reynolds and Sgt. Bertsch.

### Negligent Use Of Force

The County defendants argue that Sheriff Mims, Lt. Reynolds and Sgt. Bertsch are not subject liability under the complaint's (ninth) negligent use of force claim.

"A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-1273, 74 Cal.Rptr.2d 614 (1998) (citing Cal. Pen. Code, § 835a)). Peace officers "act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties, because 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Edson*, 63 Cal.App.4th at 1273, 74 Cal.Rptr.2d 614 (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-1872 (1989)).

"The question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer. . . .The test is highly deferential to the police officer's need to protect himself and others." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527, 89 Cal.Rptr.3d 801 (2009) (citation and internal quotations omitted). Moreover, "execution of an unlawful arrest or detention does not give license to an individual to strike or assault the officer unless excessive force is used or threatened." *Evans v. City of Bakersfield*, 22 Cal.App.4th 321, 331, 27 Cal.Rptr.2d 406 (1994).

The County defendants argue that Sheriff Mims and Lt. Reynolds are not liable for negligent use of force in that they were not present during Mr. Berman's arrest. The County defendants contend that Sgt. Bertsch likewise is not liable because he arrived after Mr. Berman had been arrested and handcuffed. The County defendants further point to the absence of Sheriff Mims', Lt. Reynolds' or Sgt. Bertsch's vicarious liability under California Government Code section 820.8, which provides "a public employee is not liable for any injury caused by the act or omission of another person," except as otherwise provided by statute.

The County defendants further contend that Sgt. Bertsch's alleged failure to intervene does not

give rise to his negligence liability in the absence of his presence during Mr. Berman's arrest and a duty of care to perform investigations. "Absent a special relationship creating a special duty, the police have no legal duty to control the conduct of others." *Adams v. City of Fremont*, 68 Cal.App.4th 243, 277, 80 Cal.Rptr.2d 196 (1998). "Generally, there is no legal 'duty,' and hence no liability for negligence, unless there is a special relationship between the police and either the victim or the third person which gives rise to a responsibility to control the third person's conduct." *Lopez v. City of San Diego*, 190 Cal.App.3d 678, 680, 235 Cal.Rptr. 583 (1987).

Moreover, under California law, there is not legal duty "to perform a reasonable and adequate investigation." *Hucko v. City of San Diego,* 179 Cal.App.3d 520, 522, 224 Cal.Rptr. 552 (1986). "Recovery has been denied, however, for injuries caused by the failure of police personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection." *Williams v. State of California*, 34 Cal.3d 18, 25, 192 Cal.Rptr. 233 (1987).

Based on these authorities, the County defendants contend that Mr. Berman is limited to battery and false imprisonment claims against Deputy Silk.

Mr. Berman concedes that he lacks a negligent use of force claim against Sheriff Mims and Lt. Reynolds to warrant dismissal of the claim against them. Mr. Berman argues that Sgt. Bertsch is subject to negligent use of force liability in that the excessive force on Mr. Berman "continued after Sgt. Bertsch arrived on scene, and that Sgt. Bertsch specifically permitted Deputy Sink to escort plaintiff to the basement despite plaintiff's protestations."

Mr. Berman offers nothing meaningful to support a negligent use of force claim against Sgt. Bertsch. The complaint lacks allegations that Sgt. Bertsch directly applied force on Mr. Berman or even touched him. No facts reveal that Sgt. Bertsch was on notice that the force applied by Deputy Sink or anyone else to Mr. Berman was excessive. The complaint lacks facts to infer excessive force during Mr. Berman's escort to the courthouse basement. Mr. Berman points to no pertinent authority to permit a negligent use of force claim against Sgt. Bertsch to warrant dismissal of the negligent use of force claim against Sgt. Bertsch.

/ / /

1    **The County's Negligent Hiring, Retention, Training, Supervision And Staffing**

2    The complaint's ninth claim further alleges that the County is liable for the negligent hiring,

3    retention, training, supervision and staffing of Sheriff Mims, Lt. Reynolds and Sgt. Bertsch.

4    The County defendants argue that the County is not subject to a negligent hiring and supervision

5    claim in the absence of a statute to impose direct liability on the County.  "We find no relevant case law

6    approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision

7    practices."  *de Villers v. County of San Diego*, 156 Cal.App.4th 238, 253, 67 Cal.Rptr.3d 253 (2007).

8    "[T]here is no statutory basis for declaring a governmental entity liable for negligence in its hiring and

9    supervision practices and, accordingly, plaintiffs' claim against County based on that theory is barred."

10   *de Villers*, 156 Cal.App.4th at 254, 67 Cal.Rptr.3d 253.  "We conclude that a direct claim against a

11   governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a

12   statutorily imposed duty owed by the entity to the injured party, may not be maintained."  *de Villers*, 156

13   Cal.App.4th at 255-256, 67 Cal.Rptr.3d 253.

14   The County defendants further argue that the County is not subject to a negligent hiring and

15   supervision claim based on vicarious liability in that such a claim "is not recognized by law."  The

16   County defendants continue that since a negligent hiring and supervision claim "in reality" is against

17   an entity itself, a plaintiff cannot pursue a vicarious liability theory.

18   "[P]laintiffs' allegations, which focus on the negligent hiring and supervision by the County, are

19   properly treated as direct liability claims."  *Walker v. County of Santa Clara*, 2005 WL 2437037, at p.

20   9 (N.D. Cal. 2005); *see Munoz*, 120 Cal.App. 4th at 1113, 16 Cal.Rptr.3d 521 (negligent hiring and

21   supervision of police claim treated as direct liability claim); *see also  Eastburn*, 31 Cal.4th at 1185

22   (negligent staffing and training claim against 911 company analyzed as direct liability claim). Although

23   "public entities always act through individuals, that does not convert a claim for direct negligence into

24   one based on vicarious liability."  *Munoz*, 120 Cal.App.4th at 1113, 16 Cal.Rptr.3d at 547.

25   In sum, the Claims Act's intent "is not to expand the rights of plaintiffs in suits against

26   governmental entities, but to confine potential governmental liability to rigidly delineated

27   circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993);

28   *see Eastburn*, 31 Cal.4th at 1183, 80 P.3d 656 ("common law principles were insufficient to support a

*direct* action in tort against a public entity"); *Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450, 1457, 81 Cal.Rptr.2d 165 (1998) ("in absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable");  *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App.3d 859, 866, 247 Cal.Rptr. 504  (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished"); *see Sanders v. City of Fresno*, 2006 WL 1883394, at *12 (E.D. Cal. 2006) ("Since the claims against Chief Dyer for negligent training, retention, discipline, etc. are in reality a direct claim against the City, there is no vicarious liability for Chief Dyer's alleged negligent training, retention, hiring, etc."); *see also Justin v. City and County of San Francisco*, 2008 WL 1990819, at *11 (N.D. Cal. 2008) ("Because Plaintiffs have not identified any statutory basis for liability against the City, summary judgment is appropriate as to this claim" against municipal police chief and others.)

Mr. Berman concedes that the County and Sheriff Mims are not subject to negligent hiring, retention, supervision, training and staffing claims "since any negligent supervision by Sheriff Mims is attributable to the County directly, and the County is not directly liable for such negligence."  Mr. Berman notes that the County's negligence liability is limited to vicarious liability for Sgt. Bertsch's and Deputy Sink's negligent use of force.

There is no dispute that the County is not subject to a direct claim for negligent hiring, retention, supervision, training and staffing.  Such a direct negligence claim is subject to dismissal.  As such, the County is limited to vicarious liability under California Government Code section 815(a).  Given the dismissal of negligent use of force claims against Sheriff Mims, Lt. Reynolds and Sgt. Bertsch, the County's vicarious liability is limited to Deputy Sink's negligent use of force, if any.  In sum, all (ninth) negligence claims are subject to dismissal, except claims for Deputy Sink's negligent use of force and the County's vicarious liability arising therefrom.

### **Elder Abuse**

The complaint's tenth claim proceeds under California's Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"), Cal. Welf. & Inst. Code, §§ 15610, et seq., and alleges that Deputy Sink's misconduct subjected Mr. Berman "to offensive and harmful contact against his will, in violation

1  of his California state law rights as an elder to be free from intentional physical abuse and injury." The

2  elder abuse claim further alleges that the County "is equally responsible for this misconduct of its

3  employee."

4         The County defendants argue that they are not subject to liability under the Elder Abuse Act,

5  which does not extend "to temporary encounters with law enforcement." Mr. Berman argues that the

6  Elder Abuse Act "does not require a caregiver relationship between the protected person and the

7  defendant" in that the Elder Abuse Act's "definition of physical abuse includes offenses for which police

8  officers can undoubtedly be held liable."

9         The Elder Abuse Act defines "abuse of an elder" to include "[p]hysical abuse . . . or other

10  treatment with resulting physical harm or pain or mental suffering." Cal. Welf. & Inst. Code, §

11  15610.07(a). The County defendants point to *Pirritano v. City of Redding*, 2010 WL 716235 at *4 (E.D.

12  Cal. 2010), where a fellow judge of this Court explained that "the Legislative findings and relevant case

13  law nonetheless indicate that the Elder Abuse Act was intended for deliberate consistent caretakers, not

14  for limited encounters with law enforcement. It is unlikely that the Legislature sought to create a second

15  cause of action for every case in which a disabled adult alleged wrongs at the hands of law enforcement."

16         Mr. Berman fails to demonstrate that his isolated contact with law enforcement gives rise to an

17  Elder Abuse Act claim. This Court is unconvinced that an elderly person's contact with law

18  enforcement equates to actionable abuse under the Elder Abuse Act given the Elder Abuse Act's

19  emphasis to remedy wrongs by "deliberate consistent caretakers." The Elder Abuse Act separately

20  defines "local law enforcement agency" (Cal. Wel. & Inst. Code, § 15610.45) separate from an definition

21  attributable to caretakers to recognize a distinction between the roles of law enforcement and caretakers.

22  Mr. Berman attempts to stretch Elder Abuse Act liability to a point not contemplated by the Elder Abuse

23  Act. This Court is not prepared to qualify Deputy Sink's limited interactions with Mr. Berman as elder

24  abuse under the Elder Abuse Act. A purported Elder Abuse Act claim is subject to dismissal.

25                              **Injunctive And Declaratory Relief**

26         The complaint's eleventh claim seeks injunctive and declaratory relief against all defendants.

27  Given the dismissal of all other claims against Sheriff Mims, Lt. Reynolds and Sgt. Bertsch, these

28  defendants are not subject to injunctive and declaratory relief to warrant dismissal of the eleventh claim

1  against them.

2  **CONCLUSION AND ORDER**

3      For the reasons discussed above, this Court:

4     1.    DISMISSES with prejudice against Sgt. Bertsch the (first) section 1983 and (seventh)

5          California false arrest/unlawful detention claims and the (third) section 1983 retaliation

6          claim;

7     2.    DISMISSES with prejudice the (fourth) section 1983 supervisory liability claim;

8     3.    DISMISSES with prejudice the (sixth) section 52.1 claim against Sheriff Mims, Lt.

9          Reynolds and Sgt. Bertsch and LIMITS the County to vicarious liability under the (sixth)

10         section 52.1 claim for Deputy Sink's section 52.1 violations;

11    4.    DISMISSES with prejudice the (ninth) negligence claim against Sheriff Mims, Lt.

12         Reynolds and Sgt. Bertsch and LIMITS the County to vicarious liability under the (ninth)

13         negligence claim for Deputy Sink's negligent use of force;

14    5.    DISMISSES with prejudice the (tenth) Elder Abuse Act claim;

15    6.    DISMISSES with prejudice the (eleventh) injunctive and declaratory relief claim against

16         Sheriff Mims, Lt. Reynolds and Sgt. Bertsch;

17    7.    DIRECTS the clerk to enter judgment in favor of defendants Margaret Mims, John

18         Reynolds and George Bertsch and against plaintiff Richard P. Berman in that there is no

19         just reason to delay to enter such judgment given that Mr. Berman's claims against

20         Sheriff Mims, Lt. Reynolds and Sgt. Bertsch and their alleged liability are clear and

21         distinct from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b); and

22    8.    ORDERS the County and Deputy Sink, no later than June 7, 2013, to file and serve a

23         F.R.Civ.P. 7(a)(2) answer to the complaint.

24 IT IS SO ORDERED.

25 **Dated:   May 28, 2013**          **/s/  Lawrence J. O'Neill**

26                          UNITED STATES DISTRICT JUDGE

27

28