# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD P. BERMAN, | Case No.  1:13-cv-00597- SAB |
| Plaintiff, | ORDER RE MOTIONS <u>IN</u> <u>LIMINE</u> |
| v. | (ECF Nos. 77, 79, 86, 87) |
| TRACY SINK AND COUNTY OF FRESNO, | |
| Defendants. | |

## I.

## BACKGROUND

Plaintiff Richard Berman filed this action in Fresno County Superior Court on March 26, 2013. (ECF No. 1-1 at 5-24.)  The complaint arises out of an incident at the Fresno County Courthouse in which Plaintiff alleges he was falsely arrested by Defendant Sink.  On April 23, 2013, Defendants removed the action to the Eastern District of California.  (ECF No. 1.)  On May 29, 2013, an order issued granting Defendants Bartusch, Mims and Reynolds' motion to dismiss and judgment was entered in favor of these defendants.  (ECF Nos. 11, 12.)  Following summary judgment, this action is proceeding against Defendant Sink on claims for false arrest, unlawful detention, and excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment and violation of the <u>Bane</u> Act, false arrest and unlawful detention, battery, and negligence under California law, and Defendant Fresno County on

1

1   municipal liability claims for retaliation in violation of the First Amendment and false arrest,

2   unlawful detention, battery, negligence under California law.  Plaintiff seeks monetary damages

3   and declaratory and injunctive relief.

4          On May 6, 2016, the parties filed motions in limine.  (ECF Nos. 77, 79.)  On May 20,

5   2016, the parties filed oppositions to the motions in limine.  (ECF Nos. 86, 87.)  A motion in

6   limine hearing was conducted on May 27, 2016.  Jacob Weisberg was present for Plaintiff and

7   James Arendt and Michelle Sassano was present for Defendants.  Having considered the moving,

8   and opposition papers, arguments presented at the May 27, 2016 hearing, as well as the Court's

9   file, the Court issues the following order.

10                                      **II.**

11                              **LEGAL STANDARD**

12         A party may use a motion in limine to exclude inadmissible or prejudicial evidence

13  before it is actually introduced at trial.  See Luce v. United States, 469 U.S. 38, 40 n.2 (1984).

14  "[A] motion in limine is an important tool available to the trial judge to ensure the expeditious

15  and evenhanded management of the trial proceedings."  Jonasson v. Lutheran Child and Family

16  Services, 115 F.3d 436,440 (7th Cir. 1997).  A motion in limine allows the parties to resolve

17  evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in

18  front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the

19  taint of prejudicial evidence.  Brodit v. Cambra, 350 F.3d 985, 1004-05 (9th Cir. 2003).

20         Motions in limine that exclude broad categories of evidence are disfavored, and such

21  issues are better dealt with during trial as the admissibility of evidence arises.  Sperberg v.

22  Goodyear Tire & Rubber, Co., 519 F.2d 708, 712 (6th Cir. 1975).  Additionally, some

23  evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion in

24  limine and it is necessary to defer ruling until during trial when the trial judge can better estimate

25  the impact of the evidence on the jury.  Jonasson, 115 F.3d at 440.

26         Generally, all relevant evidence is admissible.  Fed. R. Evid. 402.  "Evidence is relevant

27  if: (a) it has any tendency to make a fact more or less probable than it would be without the

28  evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

1    Relevant evidence can be excluded "if its probative value is substantially outweighed by a

2    danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

3    jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid.

4    403.

5                                             **III.**

6                                          **ANALYSIS**

7    **A.     Motions Regarding Criminal Charges Not Being Filed Against Plaintiff**

8            Plaintiff's first motion in limine and Defendants' fifth motion in limine both address the

9    issue that criminal charges were not filed against Plaintiff for the underlying arrest.  Plaintiff's

10   first motion in limine seeks to inform the jury that no criminal charges were filed against him.

11   Plaintiff argues that evidence will be presented that Defendant Sink and other deputies arrested

12   and handcuffed him for resisting arrest and assault on a peace officer.  Plaintiff contends that the

13   jury will be confused if they are not informed about the result of the arrest.  Plaintiff suggests

14   that a limiting instruction be provided to the jury that it should not consider the fact that the

15   District Attorney did not file charges against him in determining whether there was probable

16   cause for the arrest or to use force on Plaintiff.  Defendants oppose the motion arguing that a

17   prosecutor's decision whether or not to file charges is not relevant to the issues to be decided in

18   this action and it is speculative to consider the reason that the District Attorney did not file

19   charges in the action.  Defendants contend that allowing such evidence would likely have the

20   effect of improperly influencing and misleading the jury.

21          Defendants' fifth motion in limine seeks to preclude evidence regarding the lack of

22   criminal charges brought against Plaintiff.  Defendants argue that the decision of whether to

23   criminally prosecute Plaintiff is not a fact at issue in this matter and has no bearing on whether

24   Defendant Sink had probable cause to arrest him.  Plaintiff replies that he would be unfairly

25   prejudiced by preclusion of this evidence because the jury could unfairly speculate as to whether

26   charges were brought and perhaps even that he was convicted.  Plaintiff argues the jury should

27   not be left to speculate as to the result of the arrest.

28          Plaintiff cites to Jackson v. Webb, No. 1:11-CV-09, 2012 WL 3204608, at *2 (N.D. Ind.

                                                 3

1  Aug. 3, 2012), for the proposition that evidence is relevant if its exclusion would leave a

2  "chronological and conceptual void" in the story.   Defendants argue that <u>Jackson</u> is not

3  particularly compelling authority to support Plaintiff's motion.

4      In <u>Jackson</u>, while the defendant maintained "that the jury will be confused by a

5  'chronological and conceptual void' if they do not hear that [the plaintiff] was charged with any

6  offense arising out of his December 30th arrest[,]" the court did not find that the evidence was

7  relevant.  <u>Id.</u>  The court actually found that neither the charges brought against the plaintiff nor

8  the ultimate resolution were relevant to the claims in the action.  <u>ld.</u>  Neither the charges brought

9  nor the ultimate resolution should be admitted into evidence at trial.  <u>Id.</u>

10     While Plaintiff argues that the decision not to file charges is relevant here because he is

11  bringing a false arrest claim, Plaintiffs false arrest claim will depend on whether the jury finds

12  that Defendant Sink had probable cause to arrest Plaintiff.  <u>See</u> <u>Levin v. United Airlines</u>, 158

13  Cal.App.4th 1002, 1017-18 (2008) ("Penal Code section 836, subdivision (a) provides, "A peace

14  officer may arrest a person in obedience to a warrant, or, ... without a warrant, may arrest a

15  person whenever any of the following circumstances occur: [¶] (1) The officer has probable

16  cause to believe that the person to be arrested has committed a public offense in the officer's

17  presence.").  If the jury is informed that no charges were filed against Plaintiff, there is a

18  significant risk of prejudice to defendants because the jury may determine that there was no

19  probable cause to arrest Plaintiff as no charges were filed against him.

20     The Court finds that the fact that criminal charges were not filed has little relevance in

21  this action.  <u>See</u> <u>Townsend v. Benya</u>, 287 F.Supp. 2d 868, 874 (N.D. Ill. 2003) ("The disposition

22  of the criminal matter is not relevant to whether Defendants had probable cause to arrest

23  Plaintiffs.").  "In our system, so long as the prosecutor has probable cause to believe that the

24  accused committed an offense defined by statute, "it is entirely within the prosecutor's discretion

25  to decide . . . whether or not to prosecute, and what charge to file or bring[.]"  <u>Bordenkircher v.</u>

26  <u>Hayes</u>, 434 U.S. 357, 364 (1978).  There are a variety of reasons for a prosecutor's determination

27  not to file criminal charges in a particular case that are unrelated to whether probable cause exists

28  to arrest a suspect.  Further, the parties have submitted no evidence to show that charges were

1    referred to the district attorney, or proffered the reason that the prosecutor decided not to pursue

2    any referred charges against Plaintiff.  The Court finds that admitting evidence that no charges

3    were filed against Plaintiff would shift the jury's focus from the events that occurred during this

4    incident to the hindsight of the prosecutor's potential decision not to prosecute.

5         For these reasons, Plaintiff's motion <u>in limine</u> no. 1 is denied; and Defendants' motion <u>in</u>

6    <u>limine</u> no. 5 is granted.  The parties may proffer a jury instruction addressing criminal charges

7    not being an issue to be considered or speculated about by the jury.  The Court's inclination is to

8    not address this unless a party violates this order during the trial.  Should a witness violate this

9    order, then the Court will instruct the jury as to the different standards that apply in criminal

10   matters beyond the probable cause to arrest an individual and that the witness violated a previous

11   order of this court. [1]

12        **B.    Plaintiff's Motions <u>in Limine</u>**

13        1.    <u>Plaintiff's Motion in Limine No. 2</u>

14        Plaintiff's second motion <u>in limine</u> seeks to exclude evidence that there were no prior

15   findings of official wrongdoing by, or lack of disciplinary records of, any Fresno County

16   Sheriff's Department employees.  Defendants do not object to the extent that Plaintiff does not

17   object with respect to complaints or disciplinary histories of Defendant Sink or any testifying

18   peace officer.

19        Evidence regarding prior findings or lack of disciplinary records for any Fresno County

20   Sheriff's Department employee is irrelevant to the claims proceeding against Defendant Sink in

21   this action.  Accordingly, Plaintiff's motion <u>in limine</u> No. 2 is granted as it applies generally to

22   Fresno County Sheriff's Department employees.  Whether the disciplinary records or complaints

23   as to the officers that testify at trial would be admissible will need to be deferred until during trial

24   when the Court can more accurately assess the evidentiary issue in light of the Federal Rules of

25   Evidence.  <u>Jonasson</u>, 115 F.3d at 440.

26

27   ---

[1]   As noted in the Court's "Trial Conduct and Decorum" statement found on the Court's judicial website under
28   "Case Management," all trial counsel are required to advise each witness of its rulings and hence the reason the
Court will instruct the jury as to a violation by  a witness of the Court's ruling. <u>See</u> Rule 6(f).

1        2.       Plaintiff's Motion in Limine No.3

2        Plaintiff's third motion in limine seeks to exclude evidence that, at time of his retirement

3  from the Los Angeles County Sheriff's Department ("LACSD"), Plaintiff's expert witness,

4  Richard Lichten, was accused of engaging in an improper relationship with a civilian employee.

5  Plaintiff argues that the accusation is irrelevant in this action and would additionally be

6  excludable under Rule 403.  Defendants' counter that they should be able to explore any bias that

7  Mr. Lichten may have in testifying against law enforcement.  Mr. Lichten is a police procedures

8  expert and has thirty years of law enforcement experience in police procedures and conduct.

9  When Mr. Lichten retired in 2008 from LACSD there was an allegation by a civilian LACSD

10  employee that he had engaged in an improper relationship with her.  Defendants assert that

11  during questioning in another action, Mr. Lichten indicated that he retired earlier than he had

12  planned due to the investigation of the accusations made against him.  As Mr. Lichten has been

13  retained to testify regarding the law enforcement procedures at issue in this action, the Court

14  finds that the specifics as to the allegation of improper conduct is not relevant and would lead to

15  undue prejudice and the unnecessary consumption of time.

16        Defendants argue that the allegations are relevant to show bias against law enforcement.

17  The Court recognizes that "[t]he partiality of a witness is subject to exploration at trial, and is

18  always relevant as discrediting the witness and affecting the weight of his testimony."  United

19  States v. Bonilla-Guizar, 729 F.3d 1179, 1185 (9th Cir. 2013) (quoting Davis v. Alaska, 415 U.S.

20  308, 316 (1974)).  However, while the fact that allegations were made against Mr. Lichten which

21  resulted in his retirement from LACSD might have created some bias against LACSD, the Court

22  does not find that the facts here would indicate bias against law enforcement in general.  The

23  agency at issue here is the Fresno County Sheriff Department, not LACSD.  Plaintiff's motion

24  in limine to exclude the accusation of improper conduct by Mr. Lichten is granted.

25        3.       Plaintiff's Motion in Limine No.6[2]

26        Plaintiff's fourth motion in limine moves to prohibit Defendants' expert, James Sida,

27  _____

28  [2] The motion in limine is numbered 6 in Plaintiff's moving papers.  However, Plaintiff's moving paper include no motion in limine number 4 or 5.

from testifying at trial. Plaintiff contends that Mr. Sida has provided expert analysis of courthouse security that is irrelevant to any issue in this matter and would be excludable under Rule 403. Plaintiff also argues that Mr. Sida's Rule 26 disclosures and deposition testimony included "extraneous" issues contending that the only issue to be decided in this action is whether Defendant Sink was legally justified in her actions to arrest Plaintiff and use force against him and whether Plaintiff's rights were violated under the Fourth and First Amendments. Defendants counter that Mr. Sida, as a retained expert on screening practices at courthouse facilities, is entitled to explain the importance of courthouse security and the protocols used to ensure the security of the courthouse.

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Plaintiff does not argue that Mr. Sida is not qualified to testify as an expert, but seeks only to exclude certain areas of his testimony.

### a. Analysis of Courtroom Security, Jail Security, and the Danger of Weapons in the Courthouse

Plaintiff seeks to preclude Mr. Sida from presenting any testimony on courtroom or jail security and the dangers of weapons in the courthouse arguing that the testimony is irrelevant, prejudicial, and inflammatory. Defendants argue that Mr. Sida's testimony regarding courtroom security is important for the jury to understand Defendant Sink's decision not to allow the wrench to enter the courthouse.

Mr. Sida's Rule 26 report states that he was asked to provide his opinion on "whether the establishment of a security screening system, including the staffing of those posts by trained law enforcement staff, policies to guide security protocols at the entry of the courthouse serve a legitimate government interest" and if "the acts and behaviors based upon the reported facts

1   support the detention and arrest of Mr. Berman and were the actions taken by Fresno County

2   Sheriff's Deputies reasonable in the context of providing courtroom security and by its proximity

3   and access the security of the Fresno County Jail."  (Expert Report 6, ECF No. 79- 1.)  Mr. Sida

4   noted in his report that "[w]hile jail security is not directly addressed in this lawsuit access into

5   the jail by way of special corridors, holding cells and transportation from the jail to court and

6   back is a very important component relating to the prevention of contraband entering into the

7   courthouse."  (Id.)

8        While Plaintiff argues that he does not dispute that Deputy Sink had the right to inspect

9   the items coming into the courthouse, Plaintiff does dispute that since the wrench is a toy it

10  should not have been precluded from being allowed into the courthouse.  In his opposition to the

11  motion for summary judgment, Plaintiff disputed the description of the wrench stating that the

12  wrench is a toy wrench and there was no problem with it being brought into the courthouse.

13  (ECF No. 69-6; ECF No. 69-7 at Nos 4-5.)  Mr. Sida opines that the "plastic toy wrench" is a

14  "fully functional tool within the context of courthouse and/or jail security."  Based on the issues

15  that have previously been addressed in this action, it is clear that Plaintiff contends that

16  Defendant Sink should have allowed the wrench to pass through security and he was justified in

17  getting involved in the situation to address the issue of the wrench.  Accordingly, Mr. Sida's

18  testimony is relevant to the issues in this action.

19       Plaintiff argues that Mr. Sida's opinion included incidents of violence at courthouses

20  which are irrelevant in this action.  At the time of this incident, Defendant Sink was engaged in

21  screening individuals who were entering the courthouse for security reasons.  The incident at

22  issue here involves Plaintiff challenging Defendant Sink for her decision that the wrench could

23  not be brought into the courthouse.  The Court finds that Mr. Sida's analysis regarding the

24  reasons that courtroom security is necessary, including prior incidents of courtroom violence, is

25  relevant in this action.

26       While Plaintiff argues that the jury will equate Plaintiff's conduct with the "types of

27  horrific actions described" in the expert report, Defendants reply that Mr. Sida will not compare

28  those incidents with the actions of Plaintiff, but this information is necessary for the jury to

understand the significance of bringing a plastic item into the courthouse, and by way of the courthouse, into the jail.  The Court finds that the probative value of this evidence significantly outweighs any risk of prejudice to Plaintiff.  Plaintiff's motion to prohibit this testimony is denied.

Plaintiff also seeks to prohibit testimony that weapons can be made out of plastic arguing that this is irrelevant and the wrench was not a weapon.  Defendants argue that keeping contraband and other prohibited items out of the courthouse eliminates the risk of these items being brought into the jail.  Mr. Sida opines that the fact that an item is plastic does not mean it cannot be used as or made into something dangerous in the courtroom or jail setting.  (ECF No. 70-1 at 8.)  This incident involves the attempt to bring a plastic wrench into the courthouse. Plaintiff contested the wrench was not a security risk and took it from Defendant Sink.  Mr. Sida's opinion regarding the ability to use the wrench or make a weapon out of the plastic wrench is relevant in this action.  The Court denies the request to prohibit Mr. Sida from presenting testimony regarding weapons being made out of plastic.

Plaintiff argues that the probative value of Mr. Sida's testimony is outweighed by its prejudicial effect, however the issues of whether Defendant Sink lawfully arrested Plaintiff and whether the force used in this instance was excessive are directly linked to the courtroom security issues that Mr. Sida addresses in his opinion.

This incident took place at the criminal courthouse which necessarily implicates the security not only in the courthouse, but also at the jail to some extent.  The Court is aware that criminal defendants are brought from the jail to appear in court and returned to the jail. Defendants argued during the May 27, 2016 hearing that courtroom security is not only to prevent contraband from entering the courthouse, but also to prevent contraband from getting into the jail.  In this instance, until hearing Mr. Sida's testimony the Court cannot determine whether there is a sufficient link between items being brought into the courthouse and transferred to the jail.  Accordingly, Mr. Sida may testify regarding the ability to use and convert something made of plastic into a weapon in the courthouse, but may not testify regarding how such an item could be made into a weapon and used in the jail until a proper foundation is laid.

### b.      Plaintiff Insinuating Himself Into Exchange

Plaintiff also seeks to prohibit Mr. Sida from opining that Plaintiff caused his own injuries by "insinuating himself" into the exchange between Defendant Sink and Ms. Blunt.[3] Plaintiff argues that this testimony is contrary to the law under Duran v. City of Douglas. Ariz., 904 F.2d 1372 (9th Cir. 1990), and Velazquez v. City of Long Beach, 793 F.3d 1010 (9th Cir. 2015).  Defendants counter that Mr. Sida may testify to the reasonableness of Defendant Sink's actions based upon the facts provided by the evidence in this action.  Defendants argue that Plaintiff may present evidence that he did not inject himself into the situation and may cross-examine Mr. Sida regarding his conclusions.

The Court finds that Duran and Velazquez are distinguishable from this action.  Both of these actions involved incidents in which there was merely verbal conduct directed at the officers.  Duran, 904 F.2d at 1374; Velazquez, 793 F.3d at 1014.  While it is true that "Ninth Circuit law clearly establishes the right verbally to challenge the police, and verbal protests cannot support an arrest under § 148," id. (internal punctuation and citations omitted), Plaintiff's conduct in this action allegedly went beyond mere verbal protests.  Defendant Sink contends that Plaintiff took the wrench from her and refused to return it when requested.  Therefore, the Court does not find Duran and Velazquez to address the conduct at issue here.

In this instance, there is a dispute of fact as to whether Plaintiff was exercising his rights under the First Amendment or whether his conduct constituted interference with Defendant Sink in the performance of her duties.  To the extent that Plaintiff seeks to prohibit the testimony regarding whether Plaintiff inserted himself into the situation between Defendant Sink and Ms. Blunt, Plaintiffs motion is denied.

Plaintiff further seeks to prohibit Mr. Sida from testifying that Plaintiff did not represent Ms. Blunt.  Plaintiff argues this is irrelevant and lacks foundation as there is no evidence in the record as to whether Defendant Sink knew that Plaintiff did not represent Ms. Blunt.  Defendants

---

[3] Plaintiff's motion deals specifically with Mr. Sida, but also requests that no other evidence be presented on whether Plaintiff caused his own injuries.  The Court only addresses the issue as it applies to Mr. Sida.  If other evidence is presented at trial, Plaintiff can proffer an appropriate objection and the Court will rule on the issue at that time.

1  counter that Mr. Sida and Plaintiff's expert are both entitled to offer opinions as to how a

2  reasonable officer would have responded given the facts presented in this action, including

3  whether Plaintiff had "standing" to intervene in the situation.  The court finds that the fact that

4  Plaintiff did not represent Ms. Blunt does have some relevance in this action as it is relates to

5  Plaintiff's action and motivations in confronting Defendant Sink, taking the wrench from her,

6  and refusing to return it.

7      Plaintiff also argues that there is no evidence in the record to show that Defendant Sink

8  was aware that Ms. Blunt was not Plaintiff's client.  This objection is appropriately raised when

9  the Court can analyze the issue based upon the evidence presented during the trial.

10      Plaintiff's motion to prohibit Mr. Sida's testimony regarding Plaintiff insinuating himself

11  in the situation and that Ms. Blunt is not Plaintiff's client is denied.

12      **c.      Officer of Court Subject to Different Standards**

13      Plaintiff seeks to prohibit Mr. Sida from offering testimony that he considered the fact

14  that Plaintiff was an attorney who should have greater knowledge, appreciation for security

15  protocol, and understanding of the law in acting in this matter.  Plaintiff argues that the fact that

16  he is an attorney is irrelevant in this action and that the statements do not qualify as expert

17  testimony, are speculation or Mr. Sida's general personal opinion.  Defendants do not oppose

18  Plaintiff's motion to the extent that it seeks to preclude Mr. Sida from offering testimony that as

19  an officer of the Court Plaintiff should be held to a higher standard concerning his behavior at

20  the screening station.  Plaintiff's motion to prohibit such testimony is granted.

21      Plaintiff's motion in limine no. 6 is granted in part.  Mr. Sida is prohibited from offering

22  testimony regarding how a plastic item could be made into a weapon and used in the jail, and

23  that Plaintiff as an officer of the Court should be held to a higher standard concerning his

24  behavior at the screening station.

25      4.      Plaintiff's Motion in Limine No.7

26      Plaintiff seeks to prohibit police witnesses or parties from wearing their uniforms in court

27  or while testifying.  Plaintiff argues that allowing police officers to appear in uniform would

28  convey their occupation and a sense of veracity, and credibility to the jury that would unduly

1    prejudice Plaintiff. Defendants argue that the jury will learn that Defendant Sink and any officers

2    testifying are law enforcement officers and that wearing a uniform will not produce any

3    additional prejudice.  Defendants state that they will inform any law enforcement officers to

4    wear what they would normally wear if they are testifying in court in a criminal manner.

5    Defendants contend that if an officer normally wears a uniform when testifying they should not

6    be required to change into civilian clothing.

7         If a law enforcement officer is on duty and would be required to change clothing to

8    testify during the trial of this manner, then the Court will not require such officer to change into

9    civilian clothing.  However, any officer that would not be required to change shall wear civilian

10   clothing while present in court or testifying during the trial of this matter.

11        The Court grants in part Plaintiff's motion to prohibit police witnesses and parties from

12   wearing uniforms in court or while testifying.

13        5.    Plaintiff's Motion in Limine No. 8

14        Plaintiff's last motion in limine seeks to prohibit Defendants from identifying the names

15   of Plaintiff's clients or the charges against them.  Plaintiff contends that the names of the clients

16   are entitled to a right to privacy under the California Constitution and the charge against them,

17   which all relate to sexual misconduct, would prejudice the jury.  Defendants argue that since

18   Plaintiff is seeking lost income due to having to withdraw from representing clients due to the

19   injuries he incurred in this incident they are entitled to explore what he was doing to earn this

20   income.

21        While Defendants may inquire into Plaintiff's occupation as a defense attorney and what

22   he does in this capacity, the Court finds that the names of Plaintiff's clients and the charges

23   against them are not relevant to the issues to be decided in this trial.  For that reason, Plaintiff's

24   motion in limine no. 8 is granted.

25        **B.     Defendants' Motions in Limine**

26        1.    Defendants' Motion in Limine No. 1

27        Defendants seek to preclude evidence of pre-incident and post-incident complaints that

28   Defendant Sink was rude.  Prior to the incident at issue here, there had been four to five oral

1  complaints that Defendant Sink had been rude.  Approximately two years after the incident, there

2  were three complaints from judges regarding Defendant Sink's rudeness and a citizen's

3  complaint that was referred to Internal Affairs.  Defendants contend that complaints that

4  Defendant Sink was rude are not relevant to the claims proceeding in this action.  Plaintiff

5  counters that Defendants cannot use a motion in limine to resolve a factual dispute and the

6  evidence of complaints of rudeness are relevant to Plaintiff's First Amendment Monell claim.

7        The only Monell claim proceeding in this action is that the County had a policy or custom

8  of allowing deputies to retaliate against citizens for exercising their First Amendment rights.

9  The Court finds that the complaints that Defendant Sink was rude to individuals who passed

10 through the security screening does not have a tendency to make a fact more or less probable

11 than it would be without this evidence nor is it of consequence in determining the Monell claim.

12 Rude, intimidating and aggressive behavior may be unprofessional, but it does not violate the

13 First Amendment.  Entler v. McKinney, No. CV-06-5006-JPH, 2008 WL 544870, at *9 (E.D.

14 Wash. Feb. 26, 2008) (citing Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)

15 ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42

16 U.S.C. § 1983.")); see also Batista v. Rodriguez, 702 F.2d 393, 398 (2d Cir. 1983) (mere

17 rudeness or inconvenient treatment, no matter how unpleasant does not violate the First

18 Amendment).  While Plaintiff argues that the fact that Defendant Sink was rude makes it more

19 likely that she would retaliate against an individual, none of the complaints against Defendant

20 Sink address retaliatory or abusive conduct.  Accordingly, the Court finds that these complaints

21 are not relevant to the Monell claim still at issue in this action.

22        Plaintiff contends that precluding such evidence will cause him to have to dismiss his

23 First Amendment Monell claim.  However, Plaintiff may still proceed with his claim.  The Court

24 merely is finding that the evidence of complaints of rudeness are not sufficiently similar to the

25 allegations here to be relevant.  Whether Plaintiff has any other evidence to support his claim is

26 not for the Court to consider in determining the relevance of the evidence at issue in this motion

27 in limine.

28        Defendants argue that the complaints against Defendant Sink are not relevant to the

claims that are proceeding against Defendant Sink.  Generally, the claims proceeding in this action allege that Defendant Sink unlawfully arrested and detained Plaintiff, used excessive force and retaliated against Plaintiff.  The Court notes that none of these prior complaints allege any facts similar to the matters to be decided in this action.  At most, Plaintiff is accused of treating the public as if they are criminals.  There are no allegations that she used force or unlawfully arrested any individual coming through the security checkpoint or that Defendant Sink did any retaliatory acts toward any individual.  The Court finds that the complaints of rudeness are not sufficiently similar to the actions alleged here to have more than minimal relevant in this action.

Defendants also contend that the complaints that Defendant Sink was rude is improper character evidence and is not admissible at trial.  The Federal Rules of Evidence provide that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a).  The Court finds that the prior complaints of rudeness are character evidence which would be offered to show that she acted in compliance with that character on the date of the incident.

Plaintiff argues that the evidence is admissible for the purposes of 404(b).  Plaintiff contends that complaints that Defendant Sink had a history of rude and abusive behavior is evidence that the assault on Plaintiff was not a mistake or accident, but consistent with her well established and documented behavior.  While character "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident[,]" Fed. R. Evid. 404(b), the Court does not find that the fact that there were complaints that Defendant Sink was rude would fall with those exceptions as the complaints are not sufficiently similar to the acts alleged herein.

Further, allowing testimony regarding the prior complaints would run the risk of several mini trials regarding the facts underlying each complaint, any investigation that ensued, and the merits of the allegations.  The Court finds that to the extent that such complaints could have minimal relevance here, presentation of evidence on the complaints would waste the jury's time and cause undue delay in this action.  Fed. R. Evid. 403.

Defendants' motion in limine to preclude evidence of pre-incident and post-incident

1  complaints that Defendant Sink was rude is granted.

2         2.      Defendants' Motion in Limine No. 2

3         Defendants seek to preclude any witness from proffering evidence interpreting the video

4  taken from the courthouse lobby security camera.  Defendants argue that Plaintiff's expert has

5  not been designated as an expert in forensic image analysis.  However, as Plaintiff argues this is

6  not an instance in which the video is unclear and an expert is proffering his opinion regarding

7  what occurred on the video.   Here, Defendants are seeking to preclude Plaintiff's police

8  procedures expert from offering testimony regarding his perceptions of the actions of the parties

9  on the video.  In this instance, each of the experts will have developed an opinion regarding the

10  issues to be address here based upon their view of the video.  Precluding the experts from

11  offering their interpretation of the video would be prohibiting them from stating the basis of their

12  opinion.

13         Defendants argue that allowing Plaintiff's expert to testify as to his interpretation of the

14  video would intrude upon the fact finding role of the jury.  To be admissible an expert witness's

15  testimony must "help the trier of fact to understand the evidence or to determine a fact in issue."

16  Fed. R. Evid. 702(a).  Additionally, "[a ]n opinion is not objectionable just because it embraces

17  an ultimate issue." Fed. R. Evid. 407(a).  The advisory committee notes for Rule 704 state:

18         Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule
19         403 provides for exclusion of evidence which wastes time.  These provisions
           afford ample assurances against the admission of opinions which would merely
20         tell the jury what result to reach, somewhat in the manner of the oath-helpers of
           an earlier day.  They also stand ready to exclude opinions phrased in terms of
21         inadequately explored legal criteria.  Thus the question, "Did T have capacity to
           make a will?" would be excluded, while the question, "Did T have sufficient
22         mental capacity to know the nature and extent of his property and the natural
           objects of his bounty and to formulate a rational scheme of distribution?" would
23         be allowed.  McCormick § 12.

24         The Tenth Circuit considered this issue in <u>Specht v. Jensen</u>, 853 F.2d 805 (10th Cir.
25  1988).

26         The committee's illustration establishes the starting point for analysis of
           admissibility by distinguishing between testimony on issues of law and testimony
27         on ultimate facts.  While testimony on ultimate facts is authorized under Rule
           704, the committee's comments emphasize that testimony on ultimate questions
28         of law is not favored.  The basis for this distinction is that testimony on the
           ultimate factual questions aids the jury in reaching a verdict; testimony which

articulates and applies the relevant law, however, circumvents the jury's decisionmaking function by telling it how to decide the case.

Specht, 853 F.2d at 808. "[A]n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.  However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.  In no instance can a witness be permitted to define the law of the case." Id. at 809-10.

In proffering expert testimony regarding the video, an expert does not impermissibly intrude upon the fact-finding of the jury by stating in developing his opinion he considered whether Plaintiff held the wrench in a non-threatening manner, whether his stance was defensive or aggressive, or whether he was physically threatening.  Only where the expert offers an opinion that would define the issues to be addressed by the jury would he impermissibly intrude on the fact finding of the jury.  However, "[w]hile an expert must of course rely on facts or data in formulating an expert opinion, see Fed. R. Evid. 703, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." Highland Capital Mgmt L.P. v. Schneider, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).

Defendants' motion to preclude witness interpretation of the security video is denied.

3.      Defendants' Motion in Limine No. 3

Defendants' third motion in limine seeks to preclude Mr. Lichten from offering testimony with respect to standards and practices at courthouse screening checkpoints arguing that he lacks the background, training and experience to offer such opinions.  Defendants contend that Mr. Lichten's Rule 26 report fails to identify any background, experience, or training in courthouse security screening practices and procedures.

Mr. Lichten's Rule 26 report states:

I am a thirty-year law enforcement veteran.  Twenty of my thirty years were in supervisor and management positions.  I have 30 years of experience in patrol, detectives, narcotics, and large jails (over 4,000 inmates).  I have investigated countless crimes that occurred in patrol and in the jails including experience responding, handling, and supervising calls involving mentally ill persons.  In my career as a sergeant and watch commander I have amassed years of experience in analyzing use of force by my subordinates in patrol and in the jails to determine if the force used was proper, reasonable, and within policy.  I have held many in-

16

service emergency response training sessions in jails and in patrol.  I have commanded scenes at officer involved shootings and have been involved in the shooting investigation process.  I have lectured to the American Jail Association in other states about inmate riots, removal of hostile inmates from their cells/less than lethal weapons/and other jail emergencies.

(Rule 26 Report 4, ECF No. 77-1.)

The objective of court's gatekeeping requirement in allowing an expert to testify "is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Plaintiff argues that Mr. Lichten has significant law enforcement background in law enforcement practices relating the lawful arrest and the use of force and therefore should be able to testify to whether Deputy Sink's action were consistent with the County's written policies and standard police practices.  While Mr. Lichten has experience in the area of law enforcement in general and in the area of use of force, Plaintiff has presented no evidence to show that Mr. Lichten has any experience in the security screening practices and procedures at issue in this action.  The Court finds that Plaintiff has not demonstrated that Mr. Lichten is qualified to testify as an expert in the area of standards and practices in the area of courthouse security.  Defendants' motion in limine no. 3 to preclude Mr. Lichten from offering testimony with respect to standards and practices at courthouse screening checkpoints is granted.

4.   Defendants' Motion in Limine No. 4

Defendants' fourth motion in limine seeks to preclude evidence of Plaintiff's military background and community involvement.  Plaintiff counters that a witness should be able to provide brief background testimony to get a sense of the witness.  Further, Plaintiff requests that if he is precluded from offering testimony regarding his military career or charitable works all defense witnesses should be precluded from offering such testimony also.

Plaintiff's military background and community involvement are irrelevant to the issues to be determined in this action.  While generally, Plaintiff's request to preclude defense witnesses from offering similar testimony may be appropriate, until such testimony is offered the Court

1    cannot make a determination whether it would be admissible.  For example, a defense witness

2    could testify that he obtained his law enforcement experience in the military or while as a

3    volunteer law enforcement officer which would be admissible.  Accordingly, Defendants'

4    motion to preclude evidence of Plaintiff's military background and community involvement is

5    granted.

6          5.      Defendants' Motion in Limine No. 6

7          Defendants' sixth motion in limine seeks to preclude experiments or demonstrations with

8    the wrench, for example testing to determine if it could work as a functioning tool.  Defendants

9    anticipate that Plaintiff will be able to lay the foundation to admit a similar wrench into evidence

10   and seek to preclude any experiments or demonstrations with the wrench.  Plaintiff argues that

11   the jurors should be able to touch and hold the wrench to determine the reasonableness of the

12   actions of the parties that are at issue here.

13         Defendants contend that whether the wrench may or may not work on a nut or bolt in the

14   courtroom is not relevant to the issues in this action.  Plaintiff appears to concede that witnesses

15   should be precluded from experiments or demonstrations with the wrench by not addressing the

16   issue.  In this action, the issue is not whether the wrench is a functional tool and therefore

17   Defendants' motion to preclude any demonstrations with or experiments on the wrench is

18   granted.

19         Defendants' also request that the wrench not be provided to the jury during deliberations,

20   or if it is, that the jury be instructed not to attempt any demonstrations or experiments with the

21   wrench.  Plaintiff agrees that instructing jurors that they cannot conduct any functional

22   experiments with the toy wrench might be appropriate, but argues they should not be prohibited

23   from touching it or holding it because they might consider its look, size, and weight to be

24   relevant in determining the reasonableness of the actions of the parties.

25         Generally when an item is admitted in evidence the jury is provided with the opportunity

26   to view it during deliberations.  Plaintiff argues that the reasonableness of Defendant Sink's

27   exclusion of the wrench is at issue and the jury should be able to examine the wrench in

28   determining whether Defendant Sink's actions were reasonable.  Defendants argue that

1    Defendant Sink made a discretionary decision to exclude the wrench prior to Plaintiff

2    confronting her.  Defendants contend that while there is no dispute regarding whether Plaintiff

3    had the right under the First Amendment to confront Defendant Sink about her decision, the

4    reasonableness of the decision is not at issue.  Since the decision had already been made all that

5    is relevant is what occurred after Plaintiff confronted Defendant Sink.  Defendants contend that

6    allowing the jury to examine the wrench will prejudice them by improperly putting Defendant

7    Sink's discretionary decision at issue.  The Court shall defer ruling on this issue and the parties

8    shall address this issue in their trial briefs.

9         Defendants' motion in limine no. 6 is granted in part.

10        6.    Defendants' Motion in Limine No. 7

11        Defendants' seventh motion in limine seeks to preclude evidence of any prior contact

12   between Plaintiff and Defendant Sink at the courthouse security screening station.  Plaintiff

13   testified at his deposition that he had two prior incidents in which he and Defendant Sink had

14   disagreements regarding a client bringing items into the courthouse.  Plaintiff's client who had a

15   tracheotomy tried to bring a safety razor and alcohol into the courthouse.  Plaintiff described

16   Defendant Sink as being "pissed" and stated she did not like her authority to be questioned.

17   Plaintiff also testified that he did not think Defendant Sink liked defense attorneys and he

18   thought Defendant Sink did everything she could to mess with his client because it was a high

19   profile case.  Defendants argue that these prior incidents have no relevance to the issues to be

20   decided here and Plaintiff's speculation as to Defendant Sink's motives and attitude is improper

21   character evidence.  Plaintiff argues that the prior incidents are relevant here to show motive,

22   intent, or bias toward him.

23        The Court finds that the prior incidents between Defendant Sink and Plaintiff are relevant

24   as they could go to bias.  However, Defendants also identify specific statements proffered by

25   Plaintiff which would be inadmissible speculation.  Defendants' motion in limine no 7 is granted

26   in part and denied in part.

27        Accordingly, Plaintiff may testify to what occurred during the prior incidents and what he

28   perceived during the incidents, but he may not offer testimony regarding his speculation as to the

1   motives and attitude of Defendant Sink.  Specifically, while Plaintiff may testify that Defendant

2   Sink appeared mad or upset, he may not testify that she did not like her authority questioned, did

3   not like defense attorneys, or that she did everything she could to mess with his client because it

4   was a high profile case.

5           7.      Defendants' Motion in Limine No.8

6           Defendants' eighth motion in limine seeks to preclude testimony regarding whether other

7   law enforcement officers would have let the wrench enter the courthouse.  Defendants argue that

8   whether other officers would have let the wrench enter the courthouse is not relevant to

9   Defendant Sink's determination that it could not come in.  Plaintiff argues that since there is

10  conflicting testimony regarding whether other officers would have allowed the wrench into the

11  courthouse, the testimony is relevant to show that it was appropriate for Plaintiff to question

12  Deputy Sink's decision to not allow the wrench into the courthouse.

13          For the reasons previously discussed in motion in limine no. 6, the Court shall defer

14  ruling on this motion in limine until after reviewing the parties' trial briefs.

15          8.      Defendants' Motion in Limine No. 9

16          Defendants seek to preclude Plaintiff from offering testimony on the elements of Penal

17  Code Section 148(a)(l) or 243(b) and whether there was probable cause to arrest Plaintiff on

18  those charges.  Defendants contend that although Plaintiff is an experienced criminal defense

19  attorney, he has not been designated as an expert in criminal law.  Plaintiff argues that he may

20  offer lay witness testimony based upon his extensive criminal experience that he reasonably

21  believed engaging with Defendant Sink over the wrench was not interfering with a police officer.

22          Specifically, Plaintiff argues that he could testify that based on his extensive criminal

23  experience, he reasonably believed that verbally engaging with Defendant Sink over her decision

24  not to allow the wrench into the courthouse was not interfering with a peace officer in violation

25  of Penal Code section 148.  However, testimony regarding whether Plaintiff believed he was

26  interfering with Defendant Sink is not relevant to the issues to be decided here.  Further, the

27  Court disagrees that this would be proper lay testimony.

28          Plaintiff has not been designated as an expert in criminal law and therefore may not offer

1  expert testimony in this action.  A lay witness may offer testimony in the form of an opinion if it

2  is "rationally based on the witness's perception;" and "not based on scientific, technical, or other

3  specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Plaintiff's testimony

4  regarding whether he was violating section 148 is not the type of testimony that is found to be

5  based upon his knowledge and participation in the day to day affairs of his firm, but would be the

6  result of reasoning that is acquired by exerts in the field of law.  See Fed. R. Evid. 701 advisory

7  committee's note, 2000 Amendments.

8         Plaintiff's testimony based on his extensive experience as a criminal defense attorney is

9  not lay witness testimony, but would qualify as expert testimony under Rule 702 as it would be

10 acquired by "knowledge, skill, experience, training, or education."  Accordingly, Defendants'

11 motion in limine no 8 to preclude Plaintiff from offering testimony regarding the elements of the

12 Penal Code or whether there was probable cause to arrest him is granted.

13        9.      Defendants' Motion in Limine No 10

14        Defendants move to preclude testimony speculating with respect to Defendant Sink's

15 underlying reasons or motives for taking the actions that she did.  Plaintiff argues that Defendant

16 Sink's motives and intent are highly relevant in this action.

17        While Plaintiff is correct that Defendant Sink's motive and intent are relevant to this

18 action, speculative testimony is not permitted.  United States v. Lloyd, 807 F.3d 1128, 1154 (9th

19 Cir. 2015) ("a lay opinion witness 'may not testify based on speculation, rely on hearsay or

20 interpret unambiguous, clear statements.' ")  To the extent that Defendants identify specific

21 statements, those statements have been addressed in motion in limine no. 7.  Absent specific

22 statements to evaluate, whether testimony is speculative cannot be not accurately and efficiently

23 evaluated by the trial judge in a motion in limine and it is necessary to defer ruling until during

24 trial when the trial judge can better estimate the impact of the evidence on the jury.  Jonasson,

25 115 F.3d at 440.  Defendants' motion in limine no 10 to preclude speculative testimony is

26 granted to the extent that it is consistent with the statements in motion in limine no. 7 and denied

27 to the extent that it seeks preclusion of general speculative testimony.

28

1      10.    Defendants' Motion in Limine No. 11

2      Defendants' eleventh motion in limine seeks to preclude evidence related to Defendant

3  Sink's transfer from the courthouse entry screening area to escort relief two years after the

4  incident at issue here.  On February 14, 2014, Deputy Sink was transferred from courthouse

5  entry screening to an inmate escort position.  Defendants argue that the transfer to an inmate

6  escort position is irrelevant to any of the issues in this lawsuit and any remote probative value to

7  the evidence would be substantially outweighed by the risk of unfair prejudice, confusion of the

8  issues and would waste time by requiring testimony from Lieutenant Reynolds.  Plaintiff argues

9  that evidence of Defendant Sink's transfer is relevant to Plaintiff's First Amendment Monell

10 claim.

11      While Plaintiff is correct in arguing that post incident complaints can be highly probative

12 as to the existence of a policy or custom, Henry v. Cty. of Shasta, 137 F.3d 1372 (9th Cir. 1998)

13 ("post-event evidence is not only admissible for purposes of proving the existence of a municipal

14 defendant's policy or custom, but may be highly probative with respect to that inquiry"), as

15 discussed above, the Court finds that complaints that Defendant Sink was rude do not have a

16 sufficient nexus to the complaints in this action to be relevant.  Therefore, the transfer of

17 Defendant Sink to escort relief due to such complaints is irrelevant to the issues to be addressed

18 in this action.  Further, the admission of such evidence would waste the jury's time as it could

19 develop into a mini trial on the reasons for the transfer which are unrelated to the issues to be

20 addressed in this action.  Additionally, the jury could infer that the transfer was due to

21 misconduct other than mere complaints of rudeness.  The danger of prejudice to Defendants by

22 presenting such evidence would outweigh any minimal probative value of the evidence.

23 Defendants' motion in limine no 11 to preclude evidence related to Defendant Sink's transfer to

24 escort relief is granted.[4]

25

26

27 [4] In opposition to Defendants' motion in limine no. 13, Plaintiff requests that Lt. Reynold's statement that Plaintiff
   has done nothing wrong be precluded.  Plaintiff failed to raise the issue in his motions in limine and the Court

28 declines to rule on the motion as Defendants were not provided with an opportunity to address the issue.  However,
   this does not foreclose an objection at trial.

1        12.    Defendants' Motion in Limine No. 12

2        Defendants move to preclude evidence with respect to the existence or amount of any

3   undiscounted medical bills incurred or yet to be incurred by Plaintiff.  Defendants argue that

4   Plaintiff should be limited to presenting evidence as to the dollar amount actually incurred or to

5   be incurred.  Plaintiff agrees that he is limited to recovery for past medical expenses that were

6   incurred or actually owed.  Plaintiff is not seeking payment for past medical expenses, but argues

7   that since there is no guarantee that his future medical expenses will be covered by insurance he

8   would be undercompensated by so limiting his future medical expenses.

9        Plaintiff argues that there is no evidence that his future medical expenses will be covered

10  by insurance, Medicare or otherwise, therefore insurance, cash or reimbursement rates are

11  irrelevant, unduly prejudicial, and highly speculative.  Plaintiff requests that Defendants be

12  precluded from mentioning insurance rates, reimbursement rates, or government pay.

13       Under California law, "an injured plaintiff whose medical expenses are paid by private

14  insurance can recover damages for past medical expenses in an amount no greater than the

15  amount that the plaintiff's medical providers, pursuant to prior agreement, accepted as full

16  payment or, to the extent that payment is still owing, the amount that the medical providers had

17  agreed to accept as full payment for the services provided."   Corenbaum v. Lampkin, 215

18  Cal.App.4th 1308, 1324 (2013), as modified (May 13, 2013) (citing Howell v. Hamilton Meats

19  & Provisions. Inc., 52 Ca1.4th 541, 566 (2011)); see also Luttrell v. Island Pac. Supermarkets,

20  Inc., 215 Cal.App.4th 196 (2013) (applying rule in action where the plaintiff was covered by

21  Medicare).  "Damages for past medical expenses are limited to the lesser of (1) the amount paid

22  or incurred for past medical expenses and (2) the reasonable value of the services."  Corenbaum,

23  215 Cal.App.4th at 1325-26.  "[W]here a medical provider has agreed, before treating a plaintiff,

24  to accept a certain amount for its services, that constitutes the provider's price and there is no

25  need to determine a reasonable value for those services."[5]  ld. at 1326.

26  ---

[5] An unpublished decision out of Fourth District addressed future medical expenses post-Howell.  In Varela v. Birdi,
27  No. 0064315, 2015 WL 877793, at *11 (Cal. Ct. App. Feb. 27, 2015), reh'g denied (Mar. 17, 2015), review denied
(June 24, 2015), the plaintiff had prior military service and was able to receive medical benefits through his military
28  insurance.  In addressing damages for future medical expenses, the Varela court found:

1    Any evidence of a collateral source payment is inadmissible for the purpose of

2 determining the amount of damages. Corenbaum, 215 Cal.App.4th at 1327. However, evidence

3 of the amount accepted by medical providers as full payment is admissible provided the source

4 of the payment is not disclosed to the jury and the other rules of evidence are satisfied. Id. at

5 1328. But, "evidence of the full amount billed for plaintiffs' medical care [is] not admissible for

6 the purpose of determining plaintiffs' damages for their past medical expenses." Id. at 1330.

7    A plaintiff may also recover damages for future medical expenses under California law.

8 Cal. Civ. Code § 3283. Defendants contend that Plaintiff's expert will testify to the non-adjusted

9 gross estimated costs of future treatment and seek to limit Plaintiff to present evidence only of

10 the amount incurred or yet to be incurred. The full amount billed for past medical services is not

11 relevant to the reasonable value of future medical services or the value of non-economic

12 damages and is inadmissible for these purposes. Corenbaum, 215 Cal.App.4th at 1330-33; see

13 also Romine v. Johnson Controls. Inc., 224 Cal.App.4th 990, 1013 (2014), review denied (July 9,

14 2014) ("the admission of evidence of the full amount billed for plaintiffs medical care was

15 error"), but see Bermudez v. Ciolek, 237 Cal.App.4th 1311 , 1335 (2015), as modified on denial

16 of reh'g (July 20, 2015), review denied (Sept. 9, 2015) (expressing reservations about

17 Corenbaum because it did not contemplate a disagreement about the reasonableness of the

18 amount paid to settle the medical bills in full). Therefore, an expert cannot base his opinion of

19 the value of future medical expenses on the full amount billed for past medical services.

20

---

21    Future damages are different. "An injured plaintiff is entitled to recover the reasonable value of
     medical services that are reasonably certain to be necessary in the future." (Corenbaum, supra, 15

22    Cal.App.4th at p. 1330.) "However, the 'requirement of certainty ... cannot be strictly applied
     where prospective damages are sought, because probabilities are really the basis for the award.' "

23    (Behr v. Redmond (2011) 193 Cal.App.4th 517, 533.) At the time of trial, the precise medical
     costs a plaintiff will incur in the future are not known. Nor is it known how a plaintiff will

24    necessarily pay for such expenses. It is unknown for example, what, if any, insurance a plaintiff
     will have at any given time or what rate an insurer will have negotiated with any given medical

25    provider for a particular service at the time and location the plaintiff will require the medical care.
     A policy requiring a plaintiff to present evidence of future medical expenses based only on his or

26    her insurance plan at the time of trial would risk under-compensation for the injury inflicted by the
     tortfeasor. If the plaintiff were to change or lose insurance or if the negotiated rates are different

27    at the time the medical care is necessary, an award based only on current insurance rates may very
     well be insufficient. It may also unnecessarily limit the plaintiff's choice for medical care.

28 Id. at *11.

24

1  Corenbaum, 215 Cal.App.4th at 1331.  Plaintiff requests that Defendants be precluded from
2  mentioning insurance rates, reimbursement rates, or government pay.

3        In this instance it will be for the jury to determine "the reasonable cost of reasonably
4  necessary medical care that [Plaintiff] is reasonably certain to need in the future."  Bermudez, 23
5  7 Cal.App.4th at 1328.  Howell endorsed "a rule, applicable to recovery of tort damages
6  generally, that the value of property or services is ordinarily its 'exchange value,' that is, its
7  market value or the amount for which it could usually be exchanged."  Howell, 52 Ca1.4th at 556
8  (citations omitted).  California cases hold that the reasonable value of services is not necessarily
9  shown by the amount billed by the provider or the amount paid by insurance companies.
10  Bermudez, 237 Cal.App.4th at 1329-30.  The courts also recognize that the measure of damages
11  "will usually turn on a wide-ranging inquiry into the reasonable value of medical services
12  provided, because [plaintiffs] will typically incur standard, nondiscounted charges that will be
13  challenged as unreasonable by defendants."  ld. at 1330-31.  Therefore, prior to Howell, where
14  there was independent evidence that the underlying medical procedures were necessary due to
15  the tort at issue, California courts had not excluded evidence of the full amount of medical
16  expenses for the jury's determination of the reasonable value of medical expenses.  Bermudez,
17  237 Cal.App.4th at 1331.  However, courts have also held that it is error to exclude the scope of
18  rates accepted or paid by payers in determining the reasonable value of services in the
19  marketplace.  Id. at 1334.

20        In determining the reasonable value of future medical services, the experts may present
21  their opinion of the full range of payments expected for future medical services and it will be for
22  the jury to determine the reasonable value of the services that are reasonably necessary in the
23  future.  Accordingly, Defendants' motion to exclude the undiscounted medical bills yet to be
24  incurred is denied.  Further, Plaintiff's motion to preclude mention of insurance rates,
25  reimbursement rates, or government pay is also denied.

26                                              **IV.**

27                               **CONCLUSION AND ORDER**

28        Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiff's motions in limine are GRANTED IN PART AND DENIED IN PART
        as follows:

a.      Plaintiff's motions in limine nos. 2, 3, and 8 are GRANTED;

b.      Plaintiff's motion in limine nos. 1 is DENIED;

c.      Plaintiff's motion in limine no. 6 is GRANTED IN PART.  Mr. Sida is precluded
        from offering testimony that Plaintiff is held to a higher standard because he is an
        officer of the court;

d.      Plaintiff's motion in limine no. 7 is GRANTED IN PART and police witnesses
        and parties are prohibited from wearing uniforms while in court or testifying
        unless they are on duty and would be required to change into civilian clothing to
        testify during the trial;

2.      Defendants' motions in limine are GRANTED IN PART AND DENIED IN
        PART as follows:

a.      Defendants' motions in limine nos. 1, 3, 4, 5, 9, and 11 are GRANTED;

b.      Defendants' motions in limine nos. 2, 8, 10, and 12 are DENIED;

c.      Defendants' motion in limine no. 6 is GRANTED IN PART and the witnesses are
        precluded from any demonstrations with or experiments on the wrench.  The
        Court defers ruling on whether the wrench will be submitted to the jury if entered
        into evidence; and

d.      Defendants' motion in limine no. 7 is GRANTED IN PART and Plaintiff may not
        offer testimony regarding his speculation as to the motives and attitude of
        Defendant Sink.

IT IS SO ORDERED.

Dated:   **May 27, 2016**

_____
UNITED STATES MAGISTRATE JUDGE